IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GREGORY W. DICKERSON,        ) | |
| ) | |
| Plaintiff,        ) | |
| ) | CIVIL ACTION NO. 2:11cv669-WC |
| v.        ) | |
| ) | |
| MICHAEL J. ASTRUE,        ) | |
| Commissioner of Social Security,        ) | |
| ) | |
| Defendant.        ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff, Gregory W. Dickerson, applied for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq*. His application was initially denied at the initial administrative level on December 14, 2005. Tr. 216-17. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision in which he found Plaintiff not disabled since September 26, 2005, the date the application was filed. Tr. 232. On January 16, 2009, the Appeals Council vacated the May 2008 decision and remanded the case back to the ALJ for resolution of several issues. Tr. 280-82. Plaintiff received a second hearing before the ALJ, held on July 28, 2009. Tr. 21-32. Following this second hearing, on September 16, 2009, the ALJ issued a partially favorable decision, finding that Plaintiff was not disabled before January 1, 2009, but became disabled on that date, and has continued

to be disabled through the date of the ALJ's decision. Tr. 32. The Appeals Council rejected Plaintiff's request for review of the ALJ's September 2009 decision. Tr. 11-13. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step,

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

entirety and take account of evidence which detracts from the evidence relied on by the ALJ.

*Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-nine years old at the time of the second hearing before the ALJ, held on July 28, 2009. Tr. 804. Plaintiff completed high school and three years of college. *Id*. Plaintiff's past relevant work experience was as a "Forklift Operator," "Auto Salesperson", and "Delivery Driver." Tr. 30, 814. Following the second administrative hearing, and employing the five-step process, the ALJ found Plaintiff had "not engaged in substantial gainful activity since the alleged onset date." (Step 1) Tr. 24. At Step 2, the ALJ found that "since the alleged onset date of disability, March 1, 1999" Plaintiff suffers from the following severe impairments: "degenerative joint disease of lumbosacral spine (no subluxation), degenerative arthritis of the knees, glaucoma, and insulin dependent diabetes mellitus with diabetic neuropathy, diarrhea, and history of foot and leg abscesses." *Id*. The ALJ then found that "[s]ince the alleged onset date of disability, March 1, 1999, [Plaintiff] has not had an impairment or combination of impairments that met or medically equaled one of the listed impairments." (Step 3) *Id.* Next, the ALJ found that

prior to January 1, 2009, the date [Plaintiff] became disabled, [Plaintiff] had the residual functional capacity to perform the light work as defined in 20 CFR 416.967(b) except that, if allowed the option of sitting or standing at will, he could sit for about 30 minutes at one time; stand for 30 minutes at one time; sit for 6 hours during an eight-hour workday; stand and walk for 4-6 hours during an eight hour workday; frequently lift, carry, push and pull 10 pounds; occasionally lift, carry, push and pull 20 pounds; never use either foot for repetitive movements such as operating foot controls or push and pull; occasionally bend, climb stairs, and stoop; never crouch, crawl, kneel, balance, perform activities involving unprotected heights, or be around hazardous machinery, or drive commercial motorized vehicles. Any work performed by [Plaintiff] must be low stress in nature, requiring only routine changes, with no multiple or rapid changes. In addition, [the ALJ found] [Plaintiff] experienced episodes of mild to moderate pain that occasionally interfere with his ability to maintain concentration, persistence, or pace. Claimant could not climb ladders, ropes, or scaffolds and he should not sustain exposure to unprotected heights or hazardous equipment. This sit stand option would take into account the above time limitations for stand/walking/sitting plus any normal breaks which are customarily available in the work environment.

Tr. 27. The ALJ also found that "beginning on January 1, 2009, [Plaintiff] no longer had the residual functional capacity to perform basic work activities on a regular and continuing basis at any exertional level in a competitive environment." Tr. 29. After consulting with a VE, the ALJ determined that "[s]ince March 1, 1999, [Plaintiff] has been unable to perform any past relevant work." (Step 4) *Id.* At Step 5, after consulting with the VE, the ALJ found that "[p]rior to January 1, 2009, considering [Plaintiff's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. 30. After consulting with the VE, the ALJ identified the following occupations as examples: "Assembler"; "Inspector/Checker"; "Machine Packer." Tr. 31. However, the ALJ found that "[b]eginning on January 1, 2009, considering

6

[Plaintiff's] age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. 31. Accordingly, the ALJ concluded that Plaintiff "was not disabled prior to January 1, 2009, . . . but became disabled on that date, and has continued to be disabled through the date of [the] decision." Tr. 32.

### IV.   PLAINTIFF'S CLAIMS

Plaintiff presents one issue for this court's consideration in review of the ALJ's decision: whether the decision should be reversed because "the ALJ's finding that [Plaintiff] could perform light work prior to January 1, 2009 is not supported by substantial evidence." Pl.'s Br. (Doc. 12) at 10.

### V.   DISCUSSION

***Whether the ALJ's RFC assessment is supported by substantial evidence.***

Plaintiff contends that "[t]he evidence of record does not support a finding that prior to January 1, 2009, [Plaintiff] was capable of performing light work." Pl.'s Br. (Doc. 12) at 11. Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to consider: "the objective medical evidence dated before January 1, 2009" and "failed to consider or discuss the other impairments causing [Plaintiff's] pain. Specifically, . . . [that the ALJ failed to consider Plaintiff's] degenerative arthritis of the knees, glaucoma, and insulin dependent diabetes mellitus with diabetic neuropathy, diarrhea, and a history of foot and leg abscesses." *Id.* at 13-14. Finally, Plaintiff argues there are

"material inconsistencies in the [ALJ's] decision." *Id.* Defendant contends that "none of the objective evidence of record supports [Plaintiff's] claims of disability between September 26, 2005, the date his application for SSI was filed, and January 1, 2009, the date the ALJ determined he was actually disabled." Def.'s Br. (Doc. 15) at 6.

A review of the record in this case reveals that there was sufficient evidence for the ALJ's determination about Plaintiff's RFC. The ALJ found that, prior to January 2009, Plaintiff could perform light work, with certain exertional and nonexertional limitations. *See* Tr. 27. In reaching a determination as to Plaintiff's RFC, the ALJ considered the objective medical evidence of record, assigning great weight to the opinion of Dr. Evans, a medical expert who testified at the administrative hearing. In assigning great weight to Dr. Evans's testimony, the ALJ noted that "[Dr. Evans's] testimony was given under oath and he was subject to cross-examination. The expert is well-qualified to render an opinion as to [Plaintiff's] condition. His opinion is strongly supported by the evidence from treating sources, and his impartial testimony was well reasoned and persuasive. Moreover, he is the only medical doctor who had the opportunity to examine the entire medical evidentiary record." Tr. 29. After reviewing Plaintiff's entire medical record, Dr. Evans testified that Plaintiff "could do light work up until approximately January of '09" with some limitations. Specifically, Dr. Evans opined that Plaintiff "could sit for an hour a total of eight hours a day"; "could stand/walk six hours"; "could carry occasionally 20, frequently 10"; "there was no problem with simple grasping, pushing and pulling arm controls or fine manipulation."

Tr. 812. However, "even back in '05," "[Plaintiff] could not push/pull leg controls, could not drive motor vehicles"; "could not climb ladders, scaffolds, ropes, but he could occasionally crouch, kneel, crawl. Could not balance, could not work around unprotected heights, should not be around dangerous equipment." Tr. 812. Relying mostly on Dr. Leuschke's April 2009 examination, Dr. Evans further testified that "as of approximately January of '09 . . . [Plaintiff] has obviously had deterioration" and, therefore, "he would be significantly more limited in that he could only stand/walk approximately two hours as of January of '09 . . . that would be the major change in testimony would be the stand/walk." Tr. 812-13. The ALJ also relied on the medical opinion of Dr. Leuschke, assigning it "substantial weight." The ALJ noted that Dr. Leuschke's "opinion is well supported by his own clinical examination and testing, . . . and is generally consistent with the record as a whole." Tr. 29. Dr. Leuschke completed a Medical Source Statement of Ability to do Work-Related Activities (Physical), dated April 6, 2009. Tr. 734-39. Dr. Leuschke opined that Plaintiff could continuously lift up to 10 pounds, frequently lift up to 20 pounds and occasionally lift up to 50 pounds; sit for 2 hours at a time for a total of 8 hours in an 8 hour workday but ***could never stand or walk***; and that Plaintiff had no significant manipulative limitations. *Id.* A review of the record reveals that the ALJ's RFC determination includes limitations consistent with the medical opinions of both Dr. Evans and Dr. Leuschke. Tr.

27.[5] Thus, the ALJ's conclusion that Plaintiff could, prior to January 2009, perform light work with some limitations is supported by substantial evidence on the record.

The ALJ discounted Plaintiff's testimony "that his pain is [an] 8 on a 10 point scale," concluding that "[Plaintiff's] testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence." Tr. 28. The ALJ noted "[t]here are not any diagnostic studies demonstrating abnormalities that might cause such severe symptoms"; "there is no evidence of an emotional component likely to produce pain of a psychogenic nature"; and "[t]he physical findings in the record do not establish the existence of significant weight loss, muscle atrophy, or other observable signs usually associated with protracted pain of the intensity, frequency, and severity alleged." Tr. 28. Plaintiff argues that the ALJ's decision is "clearly contradictory to Dr. Colley's findings of 'wasting of the muscles of the lower extremities as noted by poor bulk, tone and strength." Pl.'s Br. (Doc. 12) at 14. However, a review of the record reveals no contradiction in the ALJ's findings because Dr. Colley examined Plaintiff on September 29, 2003 and Dr. Golomb's November 2005 examination found Plaintiff "had a full range of motion" in all areas, normal tone, motor exam and reflexes, and "[t]he strength of his major muscle groups, including . . . those of the proximal and distal portions of his upper and lower limbs, his hand grip strength and finger dexterity, were all rated 5 out of 5." Tr. 368-69. Moreover, in discounting Plaintiff's

---

[5] The court finds that Dr. Leuschke's opinion that Plaintiff can never stand or walk does in fact reveal a deterioration of Plaintiff's physical condition from 2005 to 2009 as Dr. Golomb's physical examination, conducted on November 21, 2005, indicated Plaintiff "could do work-related activities such as sitting, standing, walking, lifting, carrying and handling objects, but with some limitations." Tr. 369.

testimony, the ALJ also determined the "medical evidence contradicts [Plaintiff's] allegations regarding the severity of his back pain," noting that medical records do not indicate problems with back pain on June 20, 2008, or July 11, 2008 nor do the records indicate Plaintiff complained of back pain on February 24, 2005, June 16, 2006, March 8, 2007, August 17, 2007, or September 17, 2007. Tr. 28. Moreover, "[Plaintiff's] pain was rated '0' [with 0 representing no pain and 10 representing worst possible pain] on November 12, 2007, February 4, 2008, April 14, 2008, May 20, 2008, June 2, 2008, July 17, 2008, September 12, 2008, November 24, 2008, December 8, 2008, [and] December 19, 2008. His pain was rated '3' on December 10, 2007." Tr. 28. Thus, the ALJ properly concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to January 1, 2009." Tr. 28.

Finally, Plaintiff argues that the ALJ "failed to consider or discuss the other impairments causing [Plaintiff's] pain. Specifically, . . . degenerative arthritis of the knees, glaucoma, and insulin dependent diabetes mellitus with diabetic neuropathy, diarrhea, and a history of foot and leg abscesses." Pl.'s Br. (Doc. 12) at 14. Upon review of the record, the court agrees with Defendant, who contends that "the fact that [Plaintiff] has these impairments is not in dispute. However, . . . none of the objective evidence of record supports his claims of disability between September 26, 2005, the date his application for SSI was filed, and January 1, 2009, the date the ALJ determined he was actually disabled."

11

Def.'s Br. (Doc. 15) at 6. Indeed, Plaintiff fails to explain how these impairments caused him further limitations than those found by the ALJ for the time period prior to January 1, 2009 and he did not identify any reliable medical opinion supporting limitations beyond those stated in his RFC resulting from these impairments. While the ALJ has the responsibility to make a determination on Plaintiff's RFC, it is Plaintiff who bears the burden of proving his RFC. *See* 20 C.F.R. § 404.1512(a) & (c) (instructing claimant that ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"). For example, Plaintiff points to the physical examination conducted by Dr. Golomb on November 21, 2005. However, as noted by the ALJ, Dr. Golomb concluded that Plaintiff "could do work-related activities such as sitting, standing, walking, lifting, carrying and handling objects, but with some limitations." Tr. 369. Dr. Golomb also found "no problem with hearing, speaking, or traveling reasonable distances." *Id.* Plaintiff also points to the consultative examination performed by Dr. Colley on September 29, 2003. *See* Tr. 189-95. However, while Dr. Colley noted Plaintiff "does have wasting of the muscles of the lower extremities as noted by poor bulk, tone, and strength," Dr. Colley opined that Plaintiff could walk "six hours" "in an eight hour workday", "probably [sit] less than six hours", "could lift 20 pounds occasionally and 10 pounds frequently" and had "no manipulative restrictions." Tr. 194-95.[6] Both Dr. Golomb's and Dr.

---

[6] The court notes also that Dr. Colley's examination is outside the relevant time period as it took place before 2005.

Colley's medical opinions are consistent with the ALJ's RFC determination. Accordingly, Plaintiff is entitled to no relief on this basis.

Taking into consideration all the evidence on the record, both medical and non-medical, and Plaintiff's own testimony, it is clear that there was sufficient evidence on the record for the ALJ's determination that Plaintiff could perform light work, with certain limitations, prior to January 1, 2009 and, thus, was not disabled prior to this date. Accordingly, the ALJ's decision is supported by substantial evidence and this court will not disturb it. *See Graham*, 129 F.3d at 1422 ("The Social Security Act mandates that 'findings of the Secretary as to any act, if supported by substantial evidence, shall be conclusive.'" (quoting 42 U.S.C. § 405(g))).

## VI.  CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 10th day of October, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE